UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CARLOS ORTIZ,

                              Plaintiff,                **MEMORANDUM OF**
            -against-                          **DECISION AND ORDER**
                                                      10-CV-3747 (ADS)(ETB)
GREEN BULL, INC., HOWARD
MANUFACTURING CO., and WERNER
COMPANY,

                              Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**Ahmuty, Demers & McManus**
*Attorneys for the Plaintiff*
200 I.U. Willets Road
Albertson, NY 11507
        By: Mark A. Panzavecchia, Esq., Of Counsel

**Catalano, Gallardo & Petropoulos, LLP**
*Attorneys for Green Bull, Inc.*
100 Jericho Quadrangle, Suite 326
Jericho, NY 11753
        By: Maria Massucci, Esq.
            Domingo R. Gallardo, Esq., Of Counsel

**Lewis Brisbois Bisgaard & Smith LLP**
*Attorneys for Werner Company. Inc.*
77 Water Street, Suite 2100
New York, NY 10005
        By: Carolyn Rose Comparato, Esq., Of Counsel

**NO APPEARANCE**
Howard Manufacturing, Co.

**SPATT, District Judge**.

        This case arises from injuries sustained by Carlos Ortiz ("the Plaintiff") when he fell off a

ladder manufactured and sold by Green Bull, Inc. ("Green Bull"), a company which dissolved on

November 3, 2009. In addition to naming Green Bull as a defendant, the Plaintiff also asserts

claims against Werner Company ("Werner") based on the Plaintiff's contention that Werner is Green Bull's successor in interest and therefore assumed Green Bull's liabilities upon its dissolution. Presently before the Court is a motion by Werner to seal the record and for other relief based on: (1) the Plaintiff's alleged violation of a confidentiality agreement and (2) an alleged violation of the New York Rules of Professional Conduct by counsel for the Plaintiff, Mark Panzavecchia based on a telephone conversation between Panzavecchia and Werner employees. For the reasons set forth below, Werner's motion is denied in its entirety.

## I. THE CONFIDENTIALITY AGREEMENT

On February 4, 2011, the Plaintiff and Werner entered in to a Confidentiality and Protective Agreement ("the Confidentiality Agreement") with respect to the following documents: (1) A Bill of Sale dated May 16, 2008; (2) Fifth Third Bank Security Agreement dated December 30, 2006; (3) Collateral Transfer Agreement dated May 16, 2008; and (4) Asset Purchase Agreement dated May 16, 2008 (collectively the "Confidential Documents"). The Confidentiality Agreement stipulated that:

> This information shall be used by plaintiff's counsel in this action for the purpose of discussions held with the attorneys for Werner Co. to discuss the dismissal of this action as against Werner Co. only. This material shall not be disclosed, discussed or disseminated, directly or indirectly, to any other parties or third parties.

(Comparato Decl., Ex. C at 2.) On March 25, 2011, the Plaintiff made a motion for alternative service, seeking to serve Green Bull by its liability insurance carrier, Liberty Mutual Insurance Corporation. In its memorandum of law in support of the motion ("Alternative Service Memo"), the Plaintiff stated "On or around May 2008, Werner purchased all/substantially all of Green Bull's assets through an asset purchase agreement". (Alternative Service Memo. at 2.) According to Werner, the inclusion of this sentence, which was based on information that could

have only been obtained from the Confidential Documents, constituted a violation of the Confidentiality Agreement. Although the Plaintiff does not deny that the information in this sentence was derived from the Confidential Documents, the Plaintiff responds that it was not a violation of the Confidentiality Agreement because: (1) the Confidentiality Agreement is not operable because the Confidential Documents differed in certain respects from other versions of those documents later produced and (2) Werner waived any assertion of confidentiality over the documents by including them as exhibits to its previously filed motion to dismiss and by referencing and quoting the documents in its briefs supporting its motion to dismiss.

As an initial matter, whether the Plaintiff breached the Confidentiality Agreement, which was entered into between the parties independently and not "so ordered" by the Court, and whether Werner is entitled to any damages for that breach, including the cost of bringing the instant motion, is not properly before this Court. Thus, the Court takes no position on these issues.

Werner requests that the Court retroactively "so order" the Confidentiality Agreement in order to maintain confidentiality over the Confidential Documents and limit the Plaintiff's use of the Confidential Documents until Werner "has had the opportunity to move this Court to determine the appropriate manner in which to disclose these documents should they be deemed relevant for the prosecution and defense of this action". (Werner's Br. at 3.) However, on April 11, 2011—prior to filing the instant motion—Werner filed a motion to dismiss. Attached under seal as Exhibits F and G to the Affidavit of Carolyn Comparato in support of the motion, was a set of documents titled "Acquisition of the Loan Documents and Related Collateral and Sale of the Assets of Green Bull, Inc. May 16, 2008" ("the Acquisition Documents"). Included in the

3

Acquisition Documents were the Confidential Documents, as well as a number of additional agreements relating to the transfer of certain assets of Green Bull.

However, while Werner filed the actual Acquisition Documents under seal, it referenced and quoted certain of the Confidential Documents throughout its memorandum of law in support of the motion, which was not filed under seal.  Despite these disclosures, Werner's brief in support of the instant motion maintains that <u>all</u> of the information contained in the Confidential Documents—including the details about what assets were purchased and what entities were involved in the transactions—should be protected as "confidential business information" or "trade secrets".  The discrepancy can be attributed to the fact that, while this motion was filed after Werner's motion to dismiss, the brief in support of this motion appears to have been written prior to Werner filing the motion to dismiss.  The Court basis this observation on Werner's statement in its brief in support of the instant motion that:  "Werner <u>will be</u> filing a Motion to Dismiss the claims asserted by the plaintiff in this lawsuit and will file any relevant documents under seal."  (Werner's Br. at 3 n.2 (emphasis added).)

As a result, none of Werner's arguments in support of the instant motion address how its disclosures in the unsealed portions of the motion to dismiss impact on its request for a protective order governing the disclosure of information contained in the Confidential Documents.  Indeed, when the Plaintiff raised these disclosures in opposition to the instant motion, Werner disregarded the fact that it included substantial information from the Confidential Documents in its memorandum of law in support of the motion to dismiss, and simply stated that it had not waived any assertion of confidentiality because it filed the Acquisition Documents under seal.

The Court takes no position on whether Werner's references to and quotations from the Confidential Documents waived any future assertion of privilege or confidentiality by Werner. However, the Court finds that Werner's submission of and reliance on the Confidential Documents in its motion to dismiss renders its request for the Court to "so order" the Confidentiality Agreement moot. Having used the Confidential Documents affirmatively in support of its motion to dismiss, the Court cannot "so order" an agreement that would prevent the Plaintiff from relying on the Confidential Documents in its opposition. This holding is without prejudice to Werner's right to file a motion for a protective order governing the disclosure of information contained in the Confidential Documents, or any of the Acquisition Documents in the future.

Moreover, even if the Court eventually grants a protective order to Werner with regard to the Confidential Documents, the Court finds no basis for sealing the Alternative Service Memo or for redacting the one sentence that makes reference to the Confidential Documents. Pursuant to Fed. R. Civ. P. 5.2(e), the Court may, for good cause shown, require redaction of information from a filing with the Court. Although Werner may ultimately be able to show good cause for obtaining a protective order over the Confidential Documents as "confidential business information" or as trade secrets, the only information revealed by the sentence in the Alternative Service Memo is that Werner purchased certain of Green Bull's assets pursuant to an asset purchase agreement. This information, and more, was disclosed by Werner in its memorandum in support of its motion to dismiss. Thus, any harm allegedly caused by the Plaintiff's inclusion of this sentence has been nullified by Werner's motion to dismiss. Therefore, Werner's motion to seal the Alternative Service Memo or redact the reference to the Confidential Documents is denied.

Furthermore, Werner appears to be seeking Rule 11 sanctions against the Plaintiff on the ground that the Plaintiff falsely stated that Werner purchased "all/substantially all" of Green Bull's assets. As discussed in this Court's order denying Werner's motion to dismiss, whether Werner purchased "all/substantially all" of Green Bull's assets is a disputed issue of fact in this litigation. Based on the Court's review of the Confidential Documents, the statement that Werner purchased "all/substantially all" of Green Bull's assets is not without evidentiary support and therefore does not warrant sanctions. Accordingly, Werner's motion for sanctions against the Plaintiff for allegedly falsely representing the contents of the Confidential Documents in the Alternative Service Memo is denied.

Finally, Werner seeks an order pursuant to Federal Rule of Civil Procedure 37(a)(5) ("Rule 37") requiring the Plaintiff to reimburse Werner for the cost of bringing this motion. However, Rule 37 only provides for fees when a motion is granted. Because the Court has denied Werner's motion, Werner's request for costs pursuant to Rule 37 is denied.

## II. THE TELEPHONE CONVERSATION

In the Alternative Service Memo, the Plaintiff contends that Green Bull's former officers were not capable of receiving service on Green Bull's behalf. In this regard, the Plaintiff stated "According to representatives from Werner Co., Ms. Cecile Coulter and Mr. Mick Avila, 888-523-3371" one of the former Green Bull officers, Thomas Greco, "is now part of Werner's Louisville Division as 'President of Green Bull Brand'" and another former officer, Chris Prentice, was previously employed by Werner. (Id. at 4.) The Plaintiff also relied on this information about Mr. Greco and Mr. Prentice's employment at Werner in his opposition to Werner's motion to dismiss in order to show a continuity of business between Werner and Green Bull, in further support of his claim of successor liability. In his declaration opposing the instant

6

motion, the Plaintiff's attorney Mark Panzavecchia explains that he obtained this information by calling the number on the Green Bull ladders website, which in turn connected him to Werner customer service representatives located in Green Bull's former offices in Louisville, Kentucky.

The parties differ in their characterization of this call. According to Panzavecchia the purpose of his call was to "ascertain whether the Louisville, Kentucky facility was the appropriate mailing address for service and/or [whether] there was anyone who may be authorized to accept service of process on behalf of Green Bull at the Louisville, Kentucky facility". (Panzavecchia Decl., ¶ 12.) Panzavecchia claims that, in response to this inquiry, the Werner customer service representatives provided him with the information about Mr. Greco and Mr. Prentice.

By contrast, Werner characterizes the conversation as one where Panzavecchia contacted a party he knew to be represented by counsel, and attempted to obtain private information about the corporate structure of Werner to support the successor liability claim at the heart of the dispute between the Plaintiff and Werner.

As an initial matter, Werner contends that Panzavecchia violated Disciplinary Rule 7-104 of the New York Code of Professional Responsibility. However, this rule has been replaced by Rule 4.2, which provides that:

> In representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law.

N.Y. Comp.Codes R. & Regs. tit. 22, § 1200.0 ("Rule 4.2(a)"). Rule 4.2(a), like its predecessor, "serves to protect the attorney-client relationship, and to prevent an attorney from taking advantage of a party in the absence of the party's counsel, for instance, by eliciting unwarranted

concessions or liability-creating statements or disclosures or protected information, most particularly attorney-client communications". Tylena M. v. Heartshare Human Servs., No. 02-CV-8401, 2004 WL 1252945, at *1 (S.D.N.Y. June 7, 2004) (internal punctuation and citations omitted).

Although courts look to state disciplinary rules when considering motions for disqualification, "such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification". Hempstead Video, Inc. v. Incorporated Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005).

The courts must "balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession", id. at 132 (internal quotation marks omitted), so that disqualification is only warranted where "an attorney's conduct tends to taint the underlying trial", Bd. of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979) (internal quotation marks and citations omitted).

To the extent the purpose of the call was to obtain information in order to effectuate service on Green Bull, such conduct does not warrant disqualification. As the Second Circuit explained in Ceramco, Inc. v. Lee Pharmaceuticals, 510 F.2d 268 (2d Cir. 1975), a case similarly involving an attorney contacting a represented party to obtain jurisdictional information:

> it would be too harsh to rule that the action of counsel in telephoning defendant's employees to obtain non-privileged, relevant, and accurate information as to jurisdiction and venue constituted actual wrongdoing. [The attorney's] inquiries were limited in scope to those items of information necessary to ascertain whether suit could be instituted in the chosen forum and there is no suggestion that counsel sought any unfair advantage by his inquiries. This is the kind of misconduct, if it is misconduct, which is technical in character, does no violence to any of the fundamental values which the canons were written to protect and certainly falls far short of justifying a grant of the relief requested.

Id. at 271.  However, regardless of Panzavecchia's motivation for speaking to Werner representatives without counsel present, it does not change the fact that Panzavecchia used the information he obtained from the call to support the Plaintiff's claim for successor liability.  As stated in his opposition to Werner's motion to dismiss, the Plaintiff argues that one basis for finding continuity of business between Werner and Green Bull is that "[a]t least one officer from Green Bull (Mr. Greco and potentially Mr. Prentice) has been retained by Werner".  (Pl.'s Opp. to Motion to Dismiss at 10; see also id. at 15.)  This constituted an improper use of the information obtained through the call.

Nevertheless, "a federal court should not disqualify an attorney on ethical grounds from representing a party in a pending lawsuit in the absence of a reasonable basis for believing that his or her unprofessional conduct may affect the outcome. . . . Otherwise conventional disciplinary machinery should be used." Nyquist, 590 F.2d at 1248 (Mansfield, J., concurring).  Here, the information obtained by Panzavecchia would only affect the outcome of the case if the Court relies on this information in deciding the motion to dismiss.  However, as this conversation does not meet any of the relevant exceptions for extrinsic information a court can consider in adjudicating a motion to dismiss, it will have no bearing on the outcome of that motion.  Thus, while the use of the information obtained in the call may have been improper, the Court finds no basis for interfering with the Plaintiff's choice of counsel.  Accordingly, Werner's motion to disqualify attorney Panzavecchia is denied.

### III.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Werner's motion to seal the record and for other relief including requests for the Court to: (1) "so order" the Confidentiality Agreement; (3) sanction the Plaintiff

9

for alleged false representations in the Alternative Service Memo; and (4) disqualify attorney

Panzavecchia, is denied.

**SO ORDERED.**
Dated: Central Islip, New York
November 14, 2011

                                         ___*/s/ Arthur D. Spatt*_____
                                         ARTHUR D. SPATT
                                       United States District Judge