**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
CARLOS ORTIZ,

                              Plaintiff,                **MEMORANDUM OF**
        -against-                           **DECISION AND ORDER**
                                           10-CV-3747 (ADS)(ETB)
GREEN BULL, INC., HOWARD
MANUFACTURING CO., and WERNER
COMPANY,

                            Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**Ahmuty, Demers & McManus**
*Attorneys for the Plaintiff*
200 I.U. Willets Road
Albertson, NY 11507
      By: Mark A. Panzavecchia, Esq., Of Counsel

**Catalano, Gallardo & Petropoulos, LLP**
*Attorneys for Green Bull, Inc.*
100 Jericho Quadrangle, Suite 326
Jericho, NY 11753
      By: Maria Massucci, Esq.
          Domingo R. Gallardo, Esq., Of Counsel

**Lewis Brisbois Bisgaard & Smith LLP**
*Attorneys for Werner Company. Inc.*
77 Water Street, Suite 2100
New York, NY 10005
      By: Carolyn Rose Comparato, Esq., Of Counsel

**NO APPEARANCE**
Howard Manufacturing, Co.

**SPATT, District Judge**.

      This case arises from injuries sustained by Carlos Ortiz ("the Plaintiff") when he fell off a

ladder manufactured and sold by Green Bull, Inc. ("Green Bull"). In addition to naming Green

Bull as a defendant, the Plaintiff also asserts claims against Howard Manufacturing Co.

("Howard"), Green Bull's alleged subsidiary, and Werner Company ("Werner"), Green Bull's alleged successor in interest. Presently before the Court is a motion by Werner to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons set forth below, the motion is denied.

## I. BACKGROUND

The following description is taken from: (1) allegations in the complaint, (2) documents integral to the complaint that were relied upon by Ortiz in drafting the complaint, including documents relating to the transfer of Green Bull's assets (the "Acquisition Documents") (Exs. F & G to the Declaration of Carolyn Comparato in support of Werner's Motion to Dismiss ("the Comparato Declaration"), see Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005) ("Where a plaintiff has 'reli[ed] on the terms and effect of a document in drafting the complaint,' and that document is thus 'integral to the complaint,' [courts] may consider its contents even if it is not formally incorporated by reference.") (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)); (3) excerpts from www.greenbullladder.com (the "Green Bull Ladder website") (Ex. B to the Pl.'s Opposition to Werner's Motion to Dismiss) of which the Court can take judicial notice for the fact that the statements were published but not their truth, see Muller-Paisner v. TIAA, 289 F. App'x. 461, 466 n.5 (2d Cir. 2008) ("Judicial notice may be taken of the defendants' website for the fact of its publication."); and (4) public records from the states of Kentucky and Delaware of which the Court can take judicial notice, see Desclafani v. Pave-Mark Corp., No. 07-CV-4639, 2008 WL 3914881, at *6 (S.D.N.Y. 2008) (holding that the court could take judicial notice of records from the Florida Department of State, Division of Corporations Website pursuant to Federal Rule of Evidence 201).

**A.  Background and Procedural History**

On January 10, 2008, the plaintiff Carlos Ortiz was climbing a Green Bull extension ladder Model Number 202206 to install an air conditioner at 12 Whale Neck Drive, Merrick, New York when he alleges he sustained serious injuries after the "fiberglass and aluminum" in the ladder came apart, causing him to fall "from a height of four to eight feet in the air". (Compl., ¶¶ 16–19.)

On August 13, 2010, Ortiz commenced this action against:  (1) Green Bull, the alleged manufacturer and seller of the ladder; (2) Howard, an alleged wholly owned subsidiary of Green Bull that manufactured various components of the ladder; and (3) Werner, the alleged parent company and successor in interest to Green Bull.  Ortiz asserted against all defendants claims for negligence, strict products liability, breach of warranties, punitive damages, and violations of the New York Labor Law and New York State Industrial Code.

On January 7, 2011, Ortiz filed an amended complaint, naming as an additional defendant Liberty Surplus Insurance Corporation ("Liberty"), the insurance company that allegedly insured Green Bull on the date of the accident.  Also on January 7, 2011, Ortiz filed a second amended complaint, correcting a number of allegations that improperly identified the accident as occurring on January 1, 2008 to January 10, 2008.  On March 16, 2011, Ortiz voluntarily dismissed his claims against Liberty.  (See Docket Entry # 18.)

**B.  The Relationship Between Green Bull and Werner**

As alleged in the complaint, Green Bull is a for-profit corporation incorporated in Kentucky, with its principal place of business at 11255 Bluegrass Parkway, Louisville, Kentucky, 40299 ("the Green Bull Louisville Facility").  Werner is a for-profit corporation incorporated in the state of Delaware, with its principal place of business in Pennsylvania.

On December 6, 2004 and December 30, 2006, Green Bull executed two notes payable to Fifth Third Bank ("the Bank") in exchange for loans ("the Notes"). These Notes were secured by mortgages, a guaranty, and a security agreement. The relevant security agreement was executed by Green Bull in favor of the Bank on December 30, 2006, and was re-executed on May 16, 2008 (the "Security Agreement").

The Security Agreement granted the Bank "a security interest in all right, title and interest of [Green Bull] in the collateral now existing and hereafter arising or acquired by [Green Bull], regardless of where it is located, and defined as follows . . .:

> (a) All Accounts, all Inventory, all Equipment, all General Intangibles, all Investment Property, (b) All instruments, chattel paper, electronic chattel paper, documents, securities, moneys, cash, letters of credit, letter of credit rights, promissory notes, warrants dividends, distributions, contracts, agreements, contract rights or other property, owned by Debtor or in which Debtor has an interest, including not limited to, those which now or hereafter are in the possession or control of [the Bank] or in transit by mail or carrier to or in the possession of any third party acting on behalf of [the Bank], without regard to whether [the Bank] received the same in pledge, for safekeeping, as agent for collecting or transmission or otherwise or whether [the Bank] had conditionally released the same and the proceeds thereof, all rights to payment from, and all claims against [the Bank] and any deposit accounts of Debtor with Secured Party, Including all demand, time, savings, passbook or other accounts and all deposits therein, (c) All assets and all personal property now owned or hereafter acquired; all now owned and hereafter acquired inventory, equipment, fixtures, goods, accounts, chattel paper, documents, instruments, farm products, general intangibles, supporting obligations, software, commercial tort claims, minerals, standing timber, growing crops and all rents, issues, profits, products and proceeds thereof, wherever any of the foregoing is located.

(Comparato Decl., Ex. F.)

On an unspecified date, Green Bull defaulted on the loans. Following Green Bull's default, on May 16, 2008, Green Bull, the Bank, Werner, and an

entity called Green Bull Loan Acquisition LLC ("GBLA") entered into a series of transactions. According to the records of the Delaware Department of State: Division of Corporations, GBLA is a limited liability company incorporated in Delaware on April 29, 2008. (See Comparato Decl., Ex. I.) Although the Acquisition Documents contain a number of agreements entered into between the parties on May 16, 2008, the relevant transactions are as follows:

- The Bank entered into a Sale of Loan Documents Agreement with GBLA, whereby GBLA purchased the Bank's interest in the Notes, Security Agreement, and UCC Financing Statements. Although the Notes had also been guaranteed by mortgages and a guaranty, the Bank entered into separate agreements on May 16, 2008 with Green Bull and John Becker that resulted in the mortgages and guaranty no longer securing the Notes.

- Green Bull and GBLA entered into a Collateral Transfer Agreement ("CTA") whereby Green Bull transferred to GBLA all of the assets secured by the Security Agreement ("the Purchased Assets") to satisfy its obligations under the Notes. The Bill of Sale between Green Bull and GBLA reflects that the Purchased Assets are the same as those assets subject to the Security Agreement between Green Bull and the Bank. Because the fair market value of the Purchased Assets was less than the outstanding principal amount of the loans, in consideration for GBLA's covenant not to sue for a deficiency judgment, Green Bull also agreed in the CTA to transfer certain assets defined in a Trademark Assignment agreement, and properties listed in a Lease Agreement. In the CTA, GBLA explicitly disclaimed the assumption of any of Green Bull's liabilities, including any products liability.

- GBLA and Werner entered into an Asset Purchase Agreement ("APA"), whereby in consideration for a cash payment by Werner, GBLA transferred all of its rights, title, and interest to the Purchased Assets, the assets defined in the Trademark Agreement including the GREEN BULL trademark and goodwill, the properties defined in the Lease Agreement, and all intercompany claims to Werner. The Bill of Sale between GBLA and Werner reflects that the Purchased Assets are the same as those assets subject to the Security Agreement between Green Bull and the Bank. The APA further noted that Werner provided GBLA with a cash deposit (the "Earnest Money Deposit"), that GBLA could use as collateral to obtain a loan to purchase the Notes from the Bank. In the APA, Werner explicitly disclaimed the assumption of any of Green Bull's liabilities, including any products liability.

(See Comparato Decl., Exs. F & G.)

According to the Green Bull annual report on the Kentucky Secretary of State website ("Annual Report"), Green Bull filed its last annual report on August 25, 2008, at which time it had 1000 authorized shares. (Comparato Decl., Ex. H.) The Annual Report lists the following individuals as Green Bull officers as of the date of its last filing: (1) John L. Becker, registered agent, Chairman, and Director; (2) Thomas Becker, President; and (3) Chris Prentice, Treasurer. (Id.) On November 3, 2009, as reflected in Green Bull's Certificate of Dissolution issued by the Kentucky Secretary of State ("the Certificate of Dissolution"), the State of Kentucky administratively dissolved Green Bull after Green Bull failed to timely file its 2009 annual report. (Id.)

Excerpts from the Green Bull Ladder website state that in May of 2008 Green Bull "became a member of the Werner family of brands". In addition, the Green Bull Ladder website

advertises the Green Bull brand using the GREEN BULL trademark and indicates that Werner continues to manufacture Green Bull products from the Green Bull Louisville Facility. (Pl.'s Opp., Ex. B.)

## C. The Instant Motion

On April 11, 2011, Werner filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to plausibly allege successor liability. Ortiz does not dispute that he must show successor liability in order to recover against Werner. However, Ortiz contends that, liberally construed, the complaint, Acquisition Documents, Green Bull Ladder website, and state public records plausibly allege that Werner is liable to Ortiz as Green Bull's successor in interest.

## II. DISCUSSION

## A. Legal Standard on a Motion to Dismiss

Under the now well-established Twombly standard, "[t]o survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)); ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009). The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles. Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id. (quoting Iqbal, 129 S. Ct. at 1949). "'Second, only a complaint that states a plausible claim for

relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." Iqbal, 129 S. Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiff's favor. Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir. 2007). Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief" will it grant dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Hertz Corp. V. City of New York, 1 F.3d 121, 125 (2d Cir. 1993).

## B.  Whether the Plaintiff Has Stated a Claim of Successor Liability

Werner contends, and the Plaintiff does not dispute, that there is no basis upon which the Plaintiff can assert the causes of action in the complaint against Werner based on actions actually taken by Werner. Rather, Werner's liability is contingent upon whether Werner assumed Green Bull's tort liabilities when it acquired certain Green Bull assets. Werner contends that the Court should dismiss the complaint against it because the Plaintiff has failed to adequately plead a claim of successor liability. In addition, relying on the Acquisition Documents, Werner further argues that Ortiz cannot state a claim for successor liability against Werner as a matter of law.

As an initial matter, based on the parties' submissions on the instant motion, the Court finds that New York law governs this case. See Arch Ins. Co. v. Precision Stone, Inc., 584 F.3d 33, 39 (2d Cir. 2009) ("The parties' briefs assume that New York substantive law governs the

issues . . . presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law.") (internal quotation marks omitted); <u>Motorola Credit Corp. v. Uzan</u>, 388 F.3d 39, 61 (2d Cir. 2004).

Generally, a corporation that purchases the assets of another corporation is not liable for the seller's torts.  <u>See</u> <u>Schumacher v. Richards Shear Co.</u>, 59 N.Y.2d 239, 244-45, 464 N.Y.S.2d 437, 440, 451 N.E.2d 195, 198 (1983).  However, New York law recognizes four common-law exceptions to this rule that an asset purchaser is not responsible for the seller's liabilities, applying to:  "(1) a buyer who formally assumes a seller's debts; (2) transactions undertaken to defraud creditors; (3) a buyer who <i>de facto</i> merged with a seller; and (4) a buyer that is a mere continuation of a seller." <u>Cargo Partner AG v. Albatrans, Inc.</u>, 352 F.3d 41, 45 (2d Cir. 2003).

The Plaintiff asserts that the allegation in his complaint, combined with the contents of the Acquisition Documents, the Green Bull Ladder website, and Green Bull's Certificate of Dissolution plausibly claim that Werner assumed Green Bull's liabilities as the successor of Green Bull either as a mere continuation of Green Bull or through a <i>de facto</i> merger.  In particular, the Plaintiff notes that:  (1) Green Bull made its last corporate filing four months after the sale and officially dissolved approximately a year after the sale on November 3, 2009; (2) Werner purchased substantially all of Green Bull's assets; (3) Werner continues to produce Green Bull products and advertise those products under the Green Bull name; and (4) the former President and CEO of Green Bull, Thomas Greco, is now the Vice President of Green Bull Brands at Werner.

The Court notes that the information about Mr. Greco's employment is derived from a conversation between the Plaintiff's counsel and Werner customer service representatives. However, the Plaintiff has not provided, and the Court is not aware, of any basis upon which the

Court can consider statements derived from this conversation in adjudicating a motion to dismiss. Thus, the Court will not consider the allegation with regard to Mr. Greco's employment by Werner in assessing the sufficiency of the Plaintiff's claim. Nevertheless, as set forth below, the Court finds that the Plaintiff has sufficiently alleged that Werner is subject to successor liability under the *de facto* merger and mere continuation theories.

### 1. *De facto* Merger

"A *de facto* merger occurs when a transaction, although not in form a merger, is in substance 'a consolidation or merger of seller and purchaser.'" Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 (2d Cir. 2003) (quoting Schumacher, 59 N.Y.2d at 245, 451 N.E .2d at 198, 464 N.Y.S.2d at 440); Nettis v. Levitt, 241 F.3d 186, 193–94 (2d Cir. 2001)). Courts consider the following factors to determine if the transaction constituted a *de facto* merger: (1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) the successor's assumption of liabilities necessary for the uninterrupted continuation of the acquired corporation's business; and, (4) continuity of management, personnel, physical location, assets, and general business operation. Cargo, 352 F.3d at 46 (quoting Fitzgerald v. Cahnestock & Co., 286 A.D.2d 573, 574, 730 N.Y.S.2d 70, 71 (1st Dep't 2001).

Although a court should examine all of the relevant factors "'continuity of ownership is the essence of a merger,' and the doctrine of *de facto* merger cannot apply in its absence." Priestley v. Headminder, Inc., 647 F.3d 497, 505–06 (2d Cir. 2011) (quoting New York v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 211 (2d Cir. 2006)); see Cargo, 352 F.3d at 46. ("Whichever test applies, we are confident that the doctrine of *de facto* merger in New York does not make a corporation that purchases assets liable for the seller's contract debts absent continuity of

ownership.").  Contrary to the Plaintiff's contention, the Second Circuit has explicitly held that continuity of ownership is a necessary element to establish a *de facto* merger in tort cases.  See New York v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 211 (2d Cir. 2006) (holding that the reasoning in Cargo for holding that continuity of ownership is a necessary element to showing a *de facto* merger in contract cases "applies equally in cases involving tort claims" because this factor "distinguishes an asset purchase from a *de facto* merger").

The Plaintiff contends that the *de facto* merger doctrine has been relaxed in products liability cases, and can be satisfied "solely on the degree to which the successor continues the seller's business".  Cargo Partners AG v. Albatrans Inc., 207 F. Supp. 2d 86, 109 (S.D.N.Y. 2002).  Although the Plaintiff characterizes this argument as a difference in how court's analyze the factors under the *de facto* merger doctrine,  the Plaintiff is actually arguing for a finding of successor liability under expansions to the traditional common-law exceptions commonly referred to as the "continuity of enterprise" or "product line" exceptions.  See id. at 105 n.27 (noting that the "continuity of enterprise" exception is "merely the *de facto* merger exception without the requirement of ownership continuity"); In re New York City Asbestos Litig., 15 A.D.3d 254, 259, 789 N.Y.S.2d 484, 489 (1st Dep't 2005) ("A holding that the last two factors alone could establish a *de facto* merger would considerably enlarge the proportion of asset-sales qualifying for *de facto* merger treatment, and would essentially adopt the continuity-of-enterprise theory of successor liability and/or the product-line theory of successor liability, something the Court of Appeals specifically declined to do in Schumacher . . . .").  However, as set forth below, these expansion theories are not recognized as valid grounds for imposing successor liability under New York law.

The continuity of enterprise exception, first articulated by the Michigan Supreme Court in Turner v. Bituminous Casualty Co., 397 Mich. 406, 244 N.W.2d 873 (Mich. 1976), applies when there are "factors manifesting continuity of corporate responsibility, such as continuity of management, key personnel and physical location." Schumacher v. Richards Shear Co., Inc., 59 N.Y.2d 239, 244-45, 464 N.Y.S.2d 437, 440, 451 N.E.2d 195, 198 (1983). The product line exception, first articulated by the California Supreme Court in Ray v. Alad Corp., 19 Cal.3d 22, 560 P.2d 3 (Cal. 1977), applies in circumstances where there has been a "dissolution of the prior corporation shortly after the purchase of its equipment and the use by the successor corporation of essentially the same factory, name and office personnel after the transactions to produce the same product". Schumacher, 59 N.Y.2d at 246, 464 N.Y.S. 2d at 441, 451 N.E.2d at 199. The difference between the continuity of business and product line theories is predominantly based on their underlying rationale. Whereas the continuity of enterprise exception "bases its imposition of liability upon the successor corporation's own acts, in holding itself out to be an unbroken continuation of the original enterprise" the product line exception "look[s] primarily to the availability of a remedy, and implicitly to the location of a "deep pocket" to furnish that remedy. Salvati v. Blaw-Knox Food & Chem. Equip., Inc., 130 Misc.2d 626, 633–34 497 N.Y.S.2d 242, 247 (N.Y. Sup. Ct. 1985).

In Schumacher, a products liability case, the New York Court of Appeals declined to adopt the continuity of enterprise and product line exceptions because they were not applicable under the factual circumstances of the case. After more than a decade of conflicting decisions in the New York appellate courts, the New York Court of Appeals expressly rejected the product line exception in Semenetz v. Sherling & Walden, Inc., 7 N.Y.3d 194, 818 N.Y.S.2d 819, 851 N.E.2d 1170 (2006), on the grounds that: (1) the product line exception "threatens 'economic

12

annihilation' for small businesses" and (2)"extending liability to the corporate successor places responsibility for a defective product on a party that did not put the product into the stream of commerce . . . is inconsistent with the basic justification for strict products liability, which is to place responsibility for a defective product on the manufacturer who placed that product into commerce".   7 N.Y.3d at 200–01, 818 N.Y.S.2d at 823–24, 851 N.E.2d at 1174–75 (internal quotation marks and citations omitted).  Notably, the Court of Appeals concerns in Semenetz about the economic impact of expanding successor liability and the implication of imposing liability on a successor corporation that did not place the product into the stream of commerce are similarly applicable to the continuity of enterprise exception.

As the Second Circuit observed in National, the rejection by the New York Court of Appeals of the product line exception in Semenetz:

> suggests that the New York Court of Appeals will not eviscerate traditional common-law norms of successor liability in tort cases. That is, it suggests that the court does not find the public policy considerations as issue in tort cases sufficient to justify the departure from the common-law standards that would be necessary to find the existence of a *de facto* merger in the absence of any evidence of continuing ownership.

460 F.3d 214–15.  Thus, the Court finds that the New York Court of Appeals rejection of the product line exception suggests that they would also decline to expand successor liability under New York law to include the continuity of enterprise exception, which would similarly "mark 'a radical change from existing law implicating complex economic considerations better left to be addressed by the Legislature.'"  Semenetz, 7 N.Y.3d at 201, 818 N.Y.S.2d at 824, 851 N.E.2d at 1175 (quoting City of New York v. Pfizer, 260 A.D.2d 174, 176, 688 N.Y.S.2d 23, 25 (1st Dep't 1999)); see also Doktor v. Werner Co., 762 F. Supp. 2d 494, 499 (E.D.N.Y. 2011) (finding that the holding in Semenetz foreclosed the plaintiff's argument in a products liability case that successor liability could be imposed based on the continued marketing of the predecessor's

defective product). Accordingly, the Plaintiff is required to show a continuity of ownership in order to hold Werner liable as a successor in interest under the *de facto* merger theory.

However, what the Plaintiff needs to show to ultimately prevail on a *de facto* merger claim and what the Plaintiff must plead to state a claim are two separate inquiries. Werner contends that a failure to plead facts alleging continuity of ownership requires dismissal of the complaint. In support of this contention, Werner cites to <u>Cargo Partners</u>, where the Second Circuit upheld the dismissal of a complaint for failure to plead successor liability because the plaintiff did not allege the continuity of ownership requirement. However, in that case, the plaintiff "concede[d] that it lack[ed] 'any factual basis,' as required by Fed. R. Civ. P. 11(b)(3), on which to plead continuity of ownership between [the predecessor corporation] and [the successor corporation]". <u>Cargo Partner AG v. Albatrans, Inc.</u>, 352 F.3d 41, 46 (2d Cir. 2003).

Here, the Plaintiff does not make a similar concession, but rather states that it is unknown at this time what happened to the 1000 shares of outstanding Green Bull stock. Moreover, the Plaintiff does not know to what extent the former owners and officers of Green Bull maintained a financial interest in Werner. As Werner itself admits, the documents surrounding its purchase of Green Bull's assets are highly confidential and therefore it would be premature to dismiss the complaint before the Plaintiff has the opportunity to review the pertinent records.

Werner's reliance on <u>Rao's City View, LLC v. Soffes Woods, Inc.</u>, No. 600326/10 (N.Y. Sup. Ct. May 9, 2011) is similarly misplaced. In <u>Rao</u>, the court granted a motion to dismiss a claim of successor liability for failure to adequately plead the elements of a *de facto* merger, despite the plaintiff's contention that additional discovery was warranted on the continuity of ownership element. However, the dismissal in <u>Rao</u> was premised on the fact that, while continuity of ownership was necessary element to showing a *de facto* merger, proof of a

continuity of ownership cannot alone support a finding of successor liability. Thus, the court in Rao dismissed the complaint not only because the plaintiff failed to plead continuity of ownership, but also because the relevant asset purchase agreement: (1) explicitly stated the predecessor corporation would not be rendered insolvent by the sale; (2) the predecessor corporation was listed as "active" on the New York State Department of State, Division of Corporations website; and (3) it was clear from the agreement what assets were purchased and what assets remained with the predecessor after the sale. Here, Green Bull is listed as "inactive" on the Kentucky Secretary of State website, and, although Werner contends it did not purchase all of Green Bull's assets, as discussed more fully below, the Acquisition Documents are not clear with respect to which, if any, of Green Bull's assets were retained by Green Bull following the sale.

More applicable to the instant case is the Second Circuit's decision in Nettis v. Levitt, 241 F.3d 186 (2d Cir. 2001), overruled on other grounds, Slayton v. American Exp. Co., 460 F.3d 215, 226–28 (2d Cir. 2006), where under similar circumstances the court reversed a district court's denial of a motion to amend to add claims against a successor corporation, who was the ultimate, though not direct, purchaser of the predecessor corporation assets. The district court had denied the motion to amend as futile because: (1) the complaint only included the conclusory allegation that the "proposed defendants are 'the corporate successors' of defendants as they have 'purchased the assets of said companies and/or related companies' and 'assumed thereby the liabilities of said corporations and/or related companies'"; and (2) the relevant asset purchase agreement, reflected a cash-for-assets transaction and explicitly disclaimed the assumption of any tort liabilities. Nettis v. Levitt, No. 96-CV-806, 1999 WL 386711, at *2–3 (S.D.N.Y. June 11, 1999).

In reversing the district court, the Second Circuit first summarized the relevant agreement as follows:

> According to the Asset Purchase Agreement ("APA"), an intermediary would acquire all of The Custom Shop's real property, its tangible personal property, its inventory, its regulatory permits, its intellectual property (including the right to the name "The Custom Shop"), its contract rights, its accounts receivable, and its business records, among other things. Few assets of note were excluded. The purchaser also assumed The Custom Shop's lease and contract obligations and its accounts payable, but the APA purported to exclude all other liabilities.

Nevitts, 241 F.3d at 191. The court then held that "[c]onstrued in the light most favorable to plaintiff, the APA clearly contemplates the wholesale acquisition and continuation of [the predecessor corporation's] business" and therefore the plaintiff's failure to plead continuity of ownership, and the provisions of the APA reflecting a cash-for-assets transaction and disclaimer of liabilities, did not render the amendment futile. Nettis, 241 F.3d at 194. Notably, when the Second Circuit subsequently held in National that continuity of ownership was a necessary element of showing a *de facto* merger in tort cases, the court explained that it permitted a *de facto* merger claim to go forward in Nettis despite the failure to plead continuity of ownership because:

> In allowing the plaintiff to amend the complaint notwithstanding his failure to establish continuity of ownership, we held simply that it could not be said, at the pleading stage, that the plaintiff could not bring forward evidence that there had been a *de facto* merger.

National, 460 F.3d at 211 n3.

Here, Werner seeks dismissal of the complaint on the same grounds that the district court in Nettis denied the motion to amend, namely that the Plaintiff only alleges in the complaint the legal conclusion that Werner is successor in interest to Green Bull; the CTA and APA reflect cash-for-asset transactions; and the CTA and APA expressly disclaim the assumption of tort

liabilities.  However, applying the Second Circuit's analysis in Nettis, construing the Acquisition

Documents in the light most favorable to the Plaintiff, dismissal is not warranted because they

"contemplate the wholesale acquisition and continuation of [Green Bull's] business".  Nettis, 241

F.3d at 194.  As defined in the Security Agreement, the Green Bull assets purchased by Werner

included, among other things, all accounts, inventory, equipment, general intangibles, investment

property, instruments, assets and personal property,  books and records, customer lists, credit

files and other business and financial records.  Furthermore, as set forth in the APA, Werner also

acquired the GREEN BULL trademark and all associated goodwill, the leases to six of Green

Bull's properties, and the right to Green Bull's intercompany claims.  Indeed, although Werner

contends it did not purchase all of Green Bull's assets—and there may be additional documents

that reflect that fact—a review of the Acquisition Documents suggests that "[f]ew assets of note

were excluded" from the asset sale.  Nettis, 241 F.3d at 191.

Furthermore, the Green Bull Ladders website suggests some degree of continuity in the

management, personnel, physical location, assets and general business operations between Green

Bull and Werner.  In particular, the Plaintiff alleges that Werner continues Green Bull's business

based on the fact that the Green Bull Ladders website:  (1) identifies Green Bull as "a Werner

Brand"; (2) states that Werner's facility in Louisville, Kentucky is "staffed by long-term

employees who are proud that the majority of Green Bull branded products is still manufactured

in the United States"; (3) states that "[Werner] will be happy to answer your questions about

GREEN BULL LADDERS"; and (4) includes a picture of the Green Bull Louisville Facility that

displays both the Werner and the Green Bull names.

Although the Court does not accept these statements for their truth, the Court takes

judicial notice of their publication.  Taken together and construed in the light most favorable to

the Plaintiff, "it [cannot] not be said, at the pleading stage, that the [P]laintiff [cannot] not bring forward evidence that there ha[s] been a *de facto* merger". National, 460 F.3d at 211 n3. Thus, the Court finds that the Plaintiff has plausibly alleged a *de facto* merger between Werner and Green Bull such that he should be permitted to engage in limited discovery on the issue. See Sweatland v. Park Corp., 181 A.D.2d 243, 245, 587 N.Y.S.2d 54, 55 (4th Dep't 1992) (holding that where the successor corporation "acquired all of Bertsch's fixed assets and many of its intangible assets such as good will, engineering, patents, copyrights, and customer lists, as well as the right to use the trade name" and advertises under the predecessor corporation's name, the "plaintiff should be allowed to conduct further discovery to determine whether the transaction constituted a *de facto* merger"); Kidz Cloz, Inc. v. Officially for Kids, Inc., No. 00-CV-6270, 2002 WL 1586877, at *5 (S.D.N.Y. July 17, 2002) (holding that the plaintiffs were entitled to discovery on the issue of a *de facto* merger where the plaintiff alleged that the buyer "took complete control of [the seller's] entire ongoing business", and "allege[d] at least some of the elements of a *de facto* merger").

Finally, as set forth below, the Court finds Werner's remaining arguments that the Court should dismiss the complaint because the Plaintiff cannot show successor liability as a matter of law to be without merit.

First, Werner contends that as a matter of law the Plaintiff cannot show continuity of ownership because it purchased Green Bull's assets for cash and not stock. "The continuity-of-ownership element 'is designed to identify situations where the shareholders of a seller corporation retain some ownership interest in their assets after cleansing those assets of liability.'" National, 460 F.2d at 211 (quoting United States v. Gen. Battery, 423 F.3d 294, 306 (3d Cir. 2005)). Where one corporation purchases another corporation's assets, a continuity of

ownership exists where the predecessor corporation's shareholders become direct or indirect shareholders of the successor corporation. In re New York City Asbestos Litig., 15 A.D.3d 254, 256, 789 N.Y.S.2d 484, 486–87 (1st Dep't 2005). Thus, although a continuity of ownership is "typically satisfied where the purchasing corporation pays for the acquired assets with shares of its own stock", National, 460 F.2d at 210 n.2, a court can still find continuity of ownership where a corporation pays for the assets in cash. See Nettis, 241 F.3d at 194 (2d Cir. 2001) (citing Woodrick v. Jack J. Burke Real Estate, Inc., 306 N.J. Super. 61, 703 A.2d 306, 313 (N.J. App. Div. 1997) for the proposition that "[A] corporate successor can no longer avoid liability by simply structuring a cash-for-assets sale."); cf. In re New York City Asbestos Litig., 15 A.D.3d at 256, 789 N.Y.S.2d at 487 (finding "no continuity of ownership between Old H–T and New H–T, since New H–T paid for Old H–T's assets with cash, not with its own stock, and neither Old H–T nor any of its shareholders has become a shareholder of New H–T") (emphasis added).

Moreover, as the Second Circuit noted in National, although the continuity of ownership requirement is still necessary in tort cases, it does not mean that courts might not read the standard flexibly so that "other indicia of control over or continuing benefit from the sold assets might . . . be sufficient to satisfy the continuity of ownership factor." National, 460 F.3d at 215 n.5. Accordingly, the fact that Werner purchased Green Bull's assets for cash does not compel a finding of no successor liability, as a matter of law.

Furthermore, Werner argues that because it purchased Green Bull's assets from GBLA and not Green Bull directly, it cannot be liable as Green Bull's successor as a matter of law. While relevant, the fact that Werner purchased the assets from GBLA and not Green Bull is not dispositive because it is the intent and not the formalities of the transaction that determine whether a de facto merger exists. The Second Circuit has instructed that courts should analyze

19

the *de facto* merger factors in a flexible, rather than formulaic, manner, and the court should consider "whether, in substance, it was the intent of [the successor] to absorb and continue the operation of the [predecessor]." Nettis, 241 F.3d at 193–94 (brackets in original) (citations omitted). Here, the Acquisition Documents show that all of the transactions between the Bank and GBLA, GBLA and Green Bull, and GBLA and Werner occurred on the same day, and that GLBA used a portion of the money Werner paid GBLA for Green Bull's assets to purchase the Notes from the Bank. Construed in a light most favorable to the Plaintiff, at this stage in the litigation, the Court cannot find that Werner's purchase of the assets from GBLA forecloses successor liability. See id. at 186 (holding that successor liability claims against a successor corporation were not futile despite the fact that it acquired the predecessor's assets through an intermediary).

### 2. Mere Continuation

To show successor liability under the mere continuation theory, a plaintiff must demonstrate "the existence of a single corporation after the transfer of assets, with an identity of stock, stockholders, and directors between the successor and predecessor corporations." Graham v. James, 144 F.3d 229, 240 (2d Cir. 1998); see also Ladjevardian v. Laidlaw-Coggeshall, Inc., 431 F. Supp. 834, 839 (S.D.N.Y.1977) ("A continuation envisions a common identity of directors, stockholders and the existence of only one corporation at the completion of the transfer."). Additional factors a court can consider to determine whether a successor corporation is the "mere continuation" of the predecessor corporation includes transfer of management, personnel, physical location, good will and general business operation." Kaur v American Tr. Ins. Co., 86 A.D.3d 455,458, 926 N.Y.S.2d 517, 520 (1st Dep't 2011).

As an initial matter, contrary to the Plaintiff's contention, the common identity of directors or shareholders is a key requirement to finding a mere continuation of the business because it reflects that "it is not simply the business of the original corporation which continues, but the corporate entity itself". Ladjevardian, 431 F. Supp. at 839. As with removing the element of continuity of ownership from the *de facto* merger analysis, the absence of the identity of stock, stockholders, or directors element of the mere continuation theory would similarly result in the imposition of successor liability under the continuity of enterprise or product line exceptions, which, as discussed above, are not cognizable under New York law. See Altman v. Motion Water Sports, Inc., 722 F. Supp. 2d 234, 243 (D. Conn. 2010) (stating that the "total lack of continuity of shareholders and directors" would be "fatal" if the court applied the traditional common law mere continuation exception, but application of the Connecticut's "continuity of enterprise" exception supported a different conclusion).

The cases cited by the Plaintiff that were decided subsequent to the New York Court of Appeals decision in Semenetz for the proposition that that an identity of stock, stockholders, or directors is not required to find a mere continuation do not compel a different result. See Miot v. Miot, 78 A.D.3d 464, 464–65, 910 N.Y.S.2d 436, 437 (1st Dep't 2010) (holding that the plaintiff adequately alleged mere continuation not only because the "corporations shared an identical name and were engaged in substantially the same business", but also because "Alvin Miot, as president and sole decision-maker of both entities, continued the business of Madcat I through the incorporation of Madcat II, and was the only one benefitting from the assets of both Madcats"); Liberty Mut. Ins. Co. v. Horizon Bus Co., Inc., No. 10-CV-449, 2011 WL 1131098, at *6 (E.D.N.Y. 2011) (holding that the successor corporation, Horizon Coach, was a mere continuation of the predecessor corporation, Horizon Bus, not only because "[t]he two

companies allegedly shared facilities, customer lists, employees, general business operations, buses, and telephone numbers" but also because "Horizon Coach and its principals retained control over the assets and operations transferred to Horizon Bus, and dominated the latter's operations".) (internal quotation marks omitted).

However, consistent with the Court's above stated holding with regards to the *de facto* merger exception, the failure to sufficiently allege facts showing a commonality of stock, stockholders, or directors is not fatal to the Plaintiff's claim at this early stage in the litigation. Nevertheless, Werner contends that it cannot be liable as Green Bull's successor under the mere continuation exception as a matter of law because Green Bull continued to exist following the asset sale. The Court disagrees.

It is well-established that "a corporation cannot be considered a mere continuation where both parties to a purchase agreement continue to exist following the transaction". Conn. Indem. Co. v. 21st Century Transport Co., Inc., No. 99-CV-7735, 2001 WL 868340, at *6 (E.D.N.Y. July 21, 2001); see also Schumacher v. Richards Shear Co., 59 N.Y.2d 239, 245, 464 N.Y.S.2d 437, 440 451 N.E.2d, 195, 198 (1983) (noting that the mere continuation exception "refers to [a] corporate reorganization . . . where only one corporation survives the transaction; the predecessor corporation must be extinguished"). While the dissolution of the acquired corporation is not a dispositive factor in determining the existence of a *de facto* merger, "if the predecessor corporation continues to exist after the transaction, in however gossamer a form, the mere continuation exception is not applicable." Diaz v. South Bend Lathe Inc., 707 F. Supp. 97, 100 (E.D.N.Y. 1989).

Here, the Plaintiff contends that Green Bull made its final corporate filing four months after Werner acquired Green Bull's assets and officially dissolved on or around November 3,

2009. Although Werner contends that Green Bull's dissolution over a year later shows that Green Bull continued to exist after Werner purchased its' assets, the Certificate of Dissolution states that the state of Kentucky "administratively dissolved" Green Bull for failure to file its 2009 annual report. Given the uncertainty surrounding the circumstances of Green Bull's dissolution, and the dispute over the portion of Green Bull's assets that Werner purchased, the Court cannot say at this stage in the litigation that there are no set of facts that would show that Green Bull ceased to exist following the asset sale. McDarren v. Marvel Entm't Group, Inc., No. 94-CV-910, 1995 WL 214482, at *8 (S.D.N.Y. April 11, 1995) (holding that the mere continuation exception can still apply where the seller exists, where the seller transferred not only all of its assets "but also its business location, employees, management and good will").

Moreover, the fact that Werner allegedly did not purchase all of Green Bull's assets does not require dismissal of the complaint where, as alleged here, the predecessor corporation ceases ordinary business and dissolves soon after the sale, and the Plaintiff alleges a "continuation by [the successor corporation] of the purchased business at the same physical location, and with the same assets, general business operation, and many of the same personnel". See City of New York v. Aaer Sprayed Insulations, Inc., 281 A.D.2d 228, 229, 722 N.Y.S.2d 20, 21 (1st Dep't 2001). This is particularly true where, as here, the Court does not know which, if any, assets were retained by Green Bull or whether the retained assets were non-transferable. Kidz Cloz, Inc. v. Officially for Kids, Inc., No. 00-CV-6270, 2002 WL 1586877, at *5 (S.D.N.Y. July 17, 2002) (holding that the fact that the seller corporation retained certain assets that the plaintiff contends were non transferable did not foreclose the possibility that the buyer corporation could be liable as a successor based on the mere continuation exception).

Thus, the Court finds that, at this stage in the litigation, the Plaintiff has sufficiently pled that Werner is the mere continuation of Green Bull so as to warrant additional discovery on the issue.

### III.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Werner's motion to dismiss is denied.

**SO ORDERED.**
Dated: Central Islip, New York
November 14, 2011

_/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge